UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACOBY ANTWINE MAIZE                                    CIVIL ACTION

VERSUS                                                                 NO. 12-2619

SUE ELLEN MONFRA ET AL.                              SECTION "S" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Jacoby Antwine Maize, is a prisoner currently incarcerated in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputies Sue Ellen Monfra and Gary Cook and Sheriff Newell Normand. Maize alleges that while incarcerated in the JPCC as a pretrial detainee from April 29, 2011 to the present, his constitutional rights have been violated in various ways.  He seeks injunctive relief and monetary damages.  Record Doc. No. 3 (Complaint at ¶ V, Attachment at p. 4 of 4).

On January 28, 2013, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Danny Martiny, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he has been incarcerated in JPCC as a pretrial detainee since April 29, 2011, when he was arrested and charged with second degree murder. On the date of the conference, he stated that he was scheduled to return to court for a hearing concerning DNA results on January 31, 2013, but has no trial date.

Maize confirmed that he asserts four kinds of claims in this case; including that (a) he was improperly placed in disciplinary isolation for 14 months; (b) he was subjected to discrimination and retaliation because of his complaints; (c) he has been subjected to unsanitary jail conditions; and (d) his inmate account was overcharged for photocopies.

As to his claim relating to disciplinary isolation, Maize testified that he was placed in disciplinary isolation after he intentionally broke a light fixture in his cell. He said he broke the fixture on purpose because he had been placed in a cell with human feces and other filth on the walls and floors, and defendants "would not allow anyone to clean it up." He stated that "they left me in the cell for three days, and the only way that I could get out of the situation was to break the light, because they would take me out in order to repair the light, and they did that three or four times and still placed me back into the cell with the feces entirely covering the cell, so I continued to break the light." He testified that he broke the light fixture three (3) times.

Maize confirmed that he was given a disciplinary write-up each time he broke the light fixture, and he stated that he was also charged with criminal damage to property. He confirmed that he received a disciplinary hearing as to each write-up, i.e., three separate hearings, and at those hearings he was given an opportunity to speak on his own behalf. He said his complaint about the manner in which the hearings were conducted related to his sentencing upon being found guilty of the disciplinary violations, because defendant "Lt. Cook had issued a standing penalty that I be sentenced to isolation any time that I came into any disciplinary situation."  He alleged that the standing penalty was imposed because he had complained several times about feces in his cell and Lt. Cook and his prison guards allowing inmates to throw human feces on other inmates. Maize stated that this standing isolation penalty constitutes his retaliation claim in this case.

Expanding upon his retaliation claim, Maize said he was continuously sent to isolation totaling more than 900 days for disciplinary infractions, which he characterized as excessive sentencing.  Maize stated that he was "harassed daily" by being found guilty of  "minor rules infractions," such as verbal abuse of a deputy by using profanity toward a deputy; creating disturbances; possession of contraband, including having books and other prohibited items while in disciplinary isolation.  Maize testified that he was written up for a disciplinary infraction and given additional time in isolation for "anything – if

3

I hit on the door to get an officer's attention."  Maize said he had been found guilty of "numerous" disciplinary infractions; so many, in fact, that he could not be sure exactly how many. He confirmed that he was given written notice of every disciplinary charge and that he received a hearing for each one.

Asked to described the penalties he suffered while kept in isolation, Maize testified that he was isolated in a cell by himself with no natural light.  He said the cell contained a light fixture, and he had to stay in the cell at all times, except to take a shower and for an hour of recreation.  He complained that for three of the weeks while in isolation, he did not get an hour of recreation time.  He complained that he was required to eat and use the bathroom in the cell.  He also testified that he is representing himself in his criminal proceedings, but he has not been able to use the telephone or meet with potential witnesses in his criminal case while kept in isolation.  He confirmed again that he does not have a trial date in his case. He also said that he had asked the judge presiding over his criminal case to give him access to potential witnesses, but the judge deferred that decision to the sheriff. Maize testified that he was released from isolation and returned to population within the two weeks before the <u>Spears</u> hearing.

As to his claim of discrimination and retaliation, Maize asserted that he was subjected to retaliation for lawsuits and grievances he filed against the JPCC administration.  He identified the acts of retaliation as continuously being sent to

4

isolation and being deprived of a return to the general prison population.  Maize said his other civil suits are all pending in this court,[1] and his specific retaliation claim in this case relates to one particular suit he filed in this court, which he reported remains pending following failed settlement efforts and is "still in discovery." He identified Civil Action No. 12-374 "J" (5), Maize v. Warden Mumphrey, et al., as the case he filed for which he is being retaliated against.

As to his claim that he was housed in unconstitutionally unsanitary conditions, Maize stated that the disciplinary isolation cells are "just not clean." He testified that "they don't spray the cells for the insects, it's infested with roaches, . . . spiders, . . . mice . . . there's rust is all in the corners and the walls and they got dust you just can't clean," including "excessive amounts" of dust coming out of the ventilation units "that just covers the cell."

Maize testified that he cleans the cell himself "as often as possible, almost every day." He said he uses a disinfectant and a broom or a mop provided to him by jail security upon request.  He complained that despite these daily efforts, "you can't really get it clean and it does nothing for the spiders," and jail officials never spray for insects,

_____

[1]Maize v. Warden Mumphrey, et al., Civil Action No. 12-374 "J"(5) (preliminary conference scheduled on April 5, 2013), remains pending as of the date of issuance of this report and recommendation.

including spiders and roaches. Maize testified that he has <u>not</u> suffered any physical injuries as a result of the insects or the other unsanitary conditions in the isolation cells.

As to his final claim that his inmate account has been overcharged, Maize testified that he often needs photocopies of legal research materials for his cases, and he is being charged 25 cents per copy, "when the rule book states that it should be ten (10) cents." Maize said that when he complained about the price of photocopies, he was initially told by the law librarian that the price had gone up to 25 cents, but when he complained further, his grievance got no response, except that he got a new rule book stating that the cost was now 25 cents. He complained that JPCC "does not recognize jailhouse lawyers" and that the price had been increased after his complaint about the price. He alleged that he had been overcharged as a means of keeping him from doing legal research. He said his account now shows that he owes $1,600 in photocopy expenses for legal materials he has requested, including many copies he alleges he does not need.  He called the copy charges "excessive."

Maize alleged a violation of his equal protection rights in that other inmates were being allowed out of isolation and back into the general prison population.  He conceded, however, that he had recently been released from disciplinary isolation and returned to the general prison population and that his treatment was <u>not</u> based on race or any other

suspect classification, but instead was retaliation for his filing of complaints about the conditions of his confinement.

## ANALYSIS

### I.     STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[2]

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.     DISCIPLINARY ISOLATION

To whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on false or harassing disciplinary charges which resulted in his placement in an isolation cell, he fails to state a claim of violation of his constitutional rights.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States."  Hewitt v. Helms, 459 U.S. 460, 466 (1983).  In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

10

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997).  "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in Madison held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000).  In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768.

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 484.

11

In the instant case, Maize's testimony and his written submissions establish that the only action taken against him based upon the disciplinary violations were restricted recreation time, denial of placement in the general prison population, restricted telephone and visitation privileges, and his restriction to the isolation cell. None of these actions constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in Wolff were required or that any due process violation occurred.  Sandin, 515 U.S. at 484; Madison, 104 F.3d at 768; see Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (citing Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), petition for cert. filed, (U.S. May 8, 2010) (No. 09-10742); Hernandez, 522 F.3d at 563 (distinguishing the "extreme conditions" described in Wilkinson and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); Dixon, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); Payne v. Dretke, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

12

Thus, Maize's complaints about his punishment for violation of various disciplinary rules do not rise to the level of a constitutional violation.  No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

Even if some process might be required for these sorts of prison disciplinary penalties, it is clear that Maize received the full panoply of procedural rights contemplated by Wolff.  He was given a written statement notifying him of the charges against him.  He received hearings before the disciplinary board.  He was provided with an opportunity to make a statement on his own behalf.

In addition, Maize admitted that he actually committed various disciplinary violations, including intentionally breaking the light fixture in his cell three (3) times. Courts must accord great deference to prison officials' administrative decisions and should not interfere with legitimate prison administration, including the substantial interest in maintaining prison order and discipline, in the absence of a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  Section 1983 claims are not bases for an inmate's appeal of the fact-findings of a prison disciplinary board, particularly when he admits the disciplinary violations.  Such claims may proceed only where a showing of a constitutional violation has adequately been asserted.  No such violation has been stated in this case.

III.   RETALIATION AND DISCRIMINATION

As to his claims of discrimination and retaliation, Maize asserted that he was subjected to retaliation for lawsuits, complaints about the conditions of his confinement and grievances he filed against the JPCC administration.  It is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66) (quotations and additional citations omitted).

14

In <u>Woods</u>, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  <u>Woods</u>, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  <u>Id.</u>

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but</u> <u>for</u> the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce <u>direct</u> <u>evidence</u> <u>of</u> <u>motivation</u> or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

Recently in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.
>      . . . .  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
>      With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

<u>Id.</u> at 686 (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in <u>Morris</u> accord with the Supreme Court's holding in <u>Lewis</u> that a prisoner who brings a retaliation claim under the First

Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged

retaliatory acts must be more than de minimis, which means they must be capable of

deterring a person of ordinary firmness from further exercising his constitutional rights.

> Thus, the law in the Fifth Circuit
>
> is well established that prison officials may not retaliate against an inmate
> who exercises his right of access to court.  Officials likewise may not
> retaliate against an inmate for using the grievance system.  A plaintiff must
> allege facts showing that the defendant possessed a retaliatory motive.  The
> inmate must show more than his personal belief that he was the victim of
> retaliation.  Mere conclusory allegations of retaliation are not enough.  In
> order to proceed on his claims, a plaintiff must show that the retaliatory
> adverse act [was] more than a de minimis act.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010)

(Craven, M.J.) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25

(5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v.

Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820

(5th Cir. 1988); Hilliard v. Board of Pardons & Paroles, 759 F.2d 1190, 1193 (5th Cir.

1985); Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), amended in part and vacated in

part, 688 F.2d 266 (5th Cir. 1982); Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972)),

report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (Folsom,

J.) (emphasis added).

Accepting as true plaintiff's testimony and written allegations, he has not

established that a violation of his federal constitutional rights has occurred under the

circumstances described in his complaint.  As an initial matter, Maize cannot show either a retaliatory motive for his placement in disciplinary isolation or that, but for a retaliatory motive, his placement in disciplinary isolation would not have occurred.  Maize admitted several disciplinary violations, including the repeated and intentional destruction of jail property.  Thus, his allegations do not give rise to any plausible inference of retaliatory motive on the part of the defendants and therefore do not "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotation omitted); see Wolters v. Fed. Bureau of Prisons, 352 F. App'x 926, 928 (5th Cir. 2009) (citing Jones, 188 F.3d at 325; McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)) (Inmate's claim that prison officials retaliated against him when they denied his requests to be reassigned to a different unit of the prison and they deliberately permitted him to be housed with gang-affiliated inmates "fails because Wolters has not presented any evidence that any prison official acted with a retaliatory motive and has not alleged a chronology of events from which a retaliatory motive might plausibly be inferred."); Bishop v. Does, 350 F. App'x 941, 944 (5th Cir. 2009) (citing Jones, 188 F.3d at 325) (Inmate's claim that prison official transferred him out of a unit in retaliation for his previous litigation against staff in that unit failed because plaintiff made only conclusory allegations and had no evidence of retaliatory intent.);  Leggett v. Comer, 280 F. App'x 333, 336 (5th Cir. 2008) (Retaliation claim was frivolous when inmate failed to show that

"his property would not have been missing but for his letter-writing about [prison] officials, and [that a] retaliatory intent motivated the lack of adequate inventories and storage of his property.").

The Fifth Circuit has upheld dismissals of retaliation claims based on allegedly false disciplinary charges when the inmate either admitted or was found guilty of having committed the disciplinary infraction.  Sylvester v. Cain, 311 Fed. Appx. 733, 2009 WL 423968, at *2 (5th Cir. 2009); Cross v. Dretke, 241 Fed. Appx. 203, 2007 WL 2110728, at *1 (5th Cir. 2007); Reeves v. Wood, 206 Fed. Appx. 368, 2006 WL 3337451, at *1 (5th Cir. 2006); Brown v. Craven, 106 Fed. Appx. 257, 2004 WL 1730128, at *1-2 (5th Cir. 2004).  Because he admits being guilty of the infraction of intentionally destroying prison property for which he was found guilty, Maize cannot show either a retaliatory motive for the disciplinary action or that, but for a retaliatory motive, the disciplinary action would not have occurred.

In addition, Maize has failed to show any actual injury or any actual infringement of his First Amendment right of access to the courts resulting from the alleged retaliation.  He has not shown that a person of ordinary firmness would be deterred from exercising First Amendment rights as a result of his placement in disciplinary isolation.

"While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more

than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Norton, 122 F.3d at 290; Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, Maize must demonstrate that his position as a litigant was actually prejudiced. Lewis v. Casey, 518 U.S. 343, 356 (1996); Cochran v. Baldwin, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); Smith v. Polunsky, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); Eason, 73 F.3d at 1328. The inmate must demonstrate that the alleged actions of prison officials "hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351.

Maize wholly fails to establish any violation of his First Amendment rights. It is clear that plaintiff has submitted materials sufficient to prosecute this civil case and his other case filed in this court.  It must be concluded that his First Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court, Vaccaro, 1997 WL 574977, at *1; Norton, 122 F.3d at 290; Eason, 73 F.3d at 1328, was not violated.

It is clear that no actual legal prejudice to Maize's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants. "[C]ausation

is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000). In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Lewis, 518 U.S. at 356 (emphasis added). Maize has fully pursued more than one civil action in this court while confined in disciplinary isolation. He testified that he has recently been moved from disciplinary isolation to the general prison population and has no set trial date yet concerning the murder charge against him in state court.

Thus, Maize's retaliation claim alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. He has not shown the existence of retaliatory motive, causation or actual prejudice to his position as a litigant. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

Maize also alleged as part of his retaliation claim that his equal protection rights had been violated in that other inmates were being allowed out of isolation and back into the general prison population.  However, he testified that he has recently been returned to the general prison population, and he conceded in his testimony that his treatment was not based on race or any other suspect classification.

"To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination."  McKnight v. Eason, 227 Fed. Appx. 356, 2007 WL 1334184, at *1 (5th Cir. 2007) (citation omitted); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007).  "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination.  Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim."  Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); accord Jones v. Castro, No. SA-6-CA-846-NSN, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995)).

In the instant case, Maize concedes that his placement in isolation was not discriminatory based upon race or other prohibited motivation.  Plaintiff's conclusory allegations are insufficient to state a claim for a violation of his right to equal protection. See Al-Ra'id, 69 F.3d at 32 (conclusory allegations of racial malice insufficient to maintain equal protection claim); Portillo v. Brown, No. 2:07-CV-0031, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing Al-Ra'id, 69 F.3d at 32) (Hispanic inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him, based on his race, were conclusory and failed to state a claim.); Webber v. Ramos, No. EP-04-CA-426-KC, 2007 WL 1039214, at *6 (W.D. Tex. Mar. 21, 2007) (citing Al-Ra'id, 69 F.3d at 32); Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 1995)) (African-American inmate failed to state an equal protection claim with allegations that prison employees discriminated against him based on his race when they removed him from one work assignment, denied him another particular work assignment and denied him the opportunity to file a formal complaint to challenge the work assignments.).

## IV.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in the JPCC.  Maize was a pretrial detainee, at all times that form the basis of his claims in this case.  Regardless whether an inmate is a

23

pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104

24

(1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Maize's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Maize's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Maize conceded in his testimony that he has suffered no physical injury or illness as a result of the allegedly unsanitary conditions. Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir. 1994); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir. 1992); <u>Robinson v. Illinois State Corr. Ctr.</u>, 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably

adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez, 522 F.3d at 560.

Maize's allegations about dirty conditions at the jail fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking

water and unsanitized living quarters, failed to state a claim.   "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, <u>virtually</u> <u>permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, the same amount of time that Maize testified he was exposed to human feces in his cell, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'"  <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

28

civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Maize do not rise to the level of a constitutional violation.  The conditions he experienced in JPCC were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution.  His complaint about being kept in a cell with feces on the walls included his Spears testimony that "they left me in the cell for [only] three days."  He conceded that he suffered no physical injuries or ailments as a result of any allegedly unsanitary conditions.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement.  For all of the foregoing reasons, plaintiff's complaints in this case about the conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

V.    ACCOUNT OVERCHARGED

Plaintiff complains that he was overcharged for photocopies. Plaintiff has no constitutional right to photocopying privileges or to be provided with services at a particular price.  Numerous courts that have considered claims like Maize's that prices

of prison services or goods are too high have held that such allegations fail to state a claim of violation of constitutional rights cognizable under Section 1983.  E.g., McCall v. Keefe Supply Co., 71 Fed. Appx. 779, 2003 WL 21716435, at *1 (10th Cir. 2003); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996); French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980); Armstrong v. Broadus, No. 1:08CV225HSO-JMR, 2009 WL 3805552, at *9 (S.D. Miss. Nov. 6, 2009); Brown v. Gulash, No. 07-cv-370-JPG, 2009 WL 2144592, at *5 (S.D. Ill. July 16, 2009); Byrd v. L.C.S. Corr. Servs., Inc., No. 07-0029, 2007 WL 2156583, at *10 (W.D. La. Apr. 27, 2007) (Methvin, M.J.).

Insofar as plaintiff asserts that he should have been provided with photocopies at a lower price, prison officials may constitutionally charge inmates for certain kinds of goods and services while incarcerated.  See Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996) (inmates permissibly charged for medical services while incarcerated).  To whatever extent he claims that the higher photocopying price he was charged was retaliatory, he fails to state a cognizable Section 1983 retaliation claim for the same reasons discussed above.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___4th___ day of April, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.